## McCORNACK *v.* SALEM RAILWAY COMPANY.

[56 Pac. 1022.]

Insolvency— Preferred Claim— Operating Expense.*—A claim for the purchase price of apparatus and appliances furnished to a street railway company which enhanced the value of its property, but were not necessary to keep the enterprise a going concern, is not entitled, after the appointment of a receiver for the company, to a preference over a prior mortgage. The test of preferability is the actual necessity for the article furnished; if the mortgaged property could not be safely used without it, there is a preference for its price, othewise not.

Idem—Back Claims.—A receiver appointed in a suit to foreclose a mortgage on the property of a corporation who is directed to take into his possession and control all its property, and to pay all current expenses incident to the administration of his trust, and to the condition and operation of the business of the corporation from time to time as it arises and accrues, is not thereby required to pay a claim which accrued prior to his appointment, and which is not entitled to preference over the mortgage creditors.

---

*Note.—With the case of *Green* v. *Coast Line R. R. Co.*, 54 Am. St. Rep. at pp. 400-433, is a monograph entitled "Claims Which Take Precedence Over Mortgages of Railways and Like Property."

On the point of allowing preferential payment of Operating Expenses and Back Claims, see 54 Am. St. Rep. pp. 405-413, and as to Construction Claims, Machinery, etc., see pp. 415-418, 420.

For a presentation of the applicability of this rule to Private Corporations, see 54 Am. St. Rep. p. 432.

As to whether Judgments for Personal Injuries recovered against a corpora-

From Marion : HENRY H. HEWITT, Judge.

Suit by E. P. McCornack, trustee, against the Salem Consolidated Street Railway Company to foreclose a mortgage, in which A. R. Heintz & Co. intervened.    The defendant, the Salem Consolidated Street Railway Company, is a corporation organized under the laws of Oregon, for the purpose, among others, of operating a street railway, and of supplying light and electric power through and by means of electrical appliances.    Having made default in the payment of its indebtednes to plaintiff, suit was instituted to foreclose the mortgage given on its entire property to secure the same, and on December 4, 1895, F. R. Anson was appointed receiver of said property.    On May 6, 1896, A. R. Heintz & Co., by leave of the court, intervened and filed their petition, wherein, after showing the existence of plaintiff's mortgage and the execution of a prior mortgage to the Northwest Loan & Trust Company, both for the security of *bona fide* indebtedness, it is alleged, in substance, that on January 17, 1894, the petitioners entered into a contract with the railway company, in pursuance of which they furnished it with two Armstrong heaters, purifiers and condensers complete, and one water tank ;    that, on May 19, 1894, they entered into a modified agreement touching the same matter, whereby, after reciting, among other things, that whereas, it had been guaranteed that the use of such apparatus and appliances would result in a saving of $135 per month in fuel required for the operation of the railway company's plant, and after trial thereof it had been demonstrated that the use of the same saved only

tion prior to the appointment of a receiver at the instance of unpaid mortgagees will take precedence over the mortgage, see *St. Louis Trust Co.* v. *Riley*, 30 L. R. A. 456 (70 Fed. 32, 16 C. C. A. 610) and *Green* v. *Coast Line R. R. Co.*, 33 L. R. A. 803, 54 Am. St. Rep. at pp. 425-429.—REPORTER.

$30 per month, it was agreed that the railway company should pay to said Heintz & Co., in full settlement for such apparatus, the sum of $33.33 per month, until $800, the contract price therefor, was fully paid, the first payment to be made May 26, 1894; that payments were made in pursuance of such agreement to and inclusive of April 26, 1895, but none others, and that there was then due the sum of $330.30; and that, pursuant to its terms, another payment would fall due March 17, 1896, and a like sum on the seventeenth day of April, 1896. It is further averred that the apparatus so furnished has greatly increased the value of the mortgaged property, and thereby added to the security of the mortgagees; that the amount of saving to the railway company by the use of such appliances and apparatus is and was greater than the sum mentioned in the contract, and that the sum now due the petitioners as aforesaid has been actually earned by the employment of said apparatus; that the mortgages, and each of them, were made with the view of the continued operation of said street railway company in the ordinary course of business, and that said company has continuously employed said apparatus in the operation of its road and plant; that at the time of the appointment of the receiver the roadbed and other equipment of the railway company were in poor and depreciated condition; that the receiver has since expended from the current earnings of said company, in permanent improvements and betterments, placing new poles for electric wires, and laying new ties and rails, the sum of $3,000; that said improvements and betterments, and said expenditures therefor, were necessary to the continued and safe operation of said street railway lines, and those portions of said railway equipment so improved are now, by reason thereof, in good, serviceable, and complete condition; and that, by reason of the premises,

34 Or.—35.

petitioners have and are entitled to a prior equitable lien upon all the property of the said railway company, prior in right to the lien of said mortgages, or either of them, which in equity and justice should be fully paid and discharged in preference to the payment of said mortgages. A demurrer was interposed by the plaintiff, on the ground that the petition does not state facts sufficient upon which to base the relief sought, which, being sustained, and a decree dismissing the petition entered, Heintz & Co. appeal.

AFFIRMED.

For appellant there was a brief over the name of *Whalley & Muir*, with an oral argument by *Mr. William T. Muir*.

For respondent there was a brief and an oral argument by *Mr. George G. Bingham*.

MR. CHIEF JUSTICE WOLVERTON, after stating the facts, delivered the opinion.

We assume at the outset, as it seems to have been conceded by the parties to this controversy, that defendant corporation and its mortgagees holding liens upon its franchises and property, are subject to rules and regulations like those governing the management, control, and disposal of the property and assets of companies and corporations engaged in the operation of ordinary railroads, with *quasi* public functions to perform. It has become a settled principle under the authorities that where a mortgage is taken upon the property, and even upon the earnings, of such a corporation it is implied, from the nature of the business in which the concern is engaged, and the usual and ordinary management and conduct of such business, that the current earnings of

the enterprise shall be first applied to the payment of the current operating expenses, such as for labor and supplies, and for necessary equipments and improvements of the mortgaged property, and that the balance only, usually termed the "net earnings," shall be applied in payment of the mortgage indebtedness. In the language of Chief Justice Waite, in *Fosdick* v. *Schall*, 99 U. S. 235, 252, "every railroad mortgagee, in accepting his security, impliedly agrees that the current debts made in the ordinary course of business shall be paid from the current receipts before he has any claim upon the income." This doctrine rests upon the ground that the maintenance of the road and the prosecution of its business are essential to the preservation of the mortgage security. The primary object is to keep the enterprise a going concern, from considerations of both public and private interest. Its application is concisely stated by Thayer, Circuit Judge, in *Central Trust Co.* v. *Clark*, 26 C. C. A. 397 (81 Fed. 269). He says: "In a suit brought to foreclose a mortgage lien upon the property of a *quasi* public corporation, it is competent for a court of equity to award a preference to a claim for property supplied or services rendered to such corporation, when it appears that the property so supplied or the services rendered were necessary to enable the company to discharge its public obligations and remain a going concern, and when it is evident that the property or services in question enhanced the value of the mortgaged property, and thereby inured to the benefit of the mortgagees." The management of such a concern, whether in the hands of its promoters or in those of a receiver, is charged with the duty of so marshaling the funds arising from current earnings as to apply them in accordance with the relative equities of the preferred creditors and the mortgagee; and if, through regard for mere conven-

ience, something is taken from the fund and paid to the mortgage creditor, when as of right it belongs to and should have been paid to the preferred creditor, it is not considered inequitable, unless the claim has become stale, to require that the preferred creditor shall be paid from the future current receipts, or from the proceeds of the sale of the mortgaged property. SIMONTON, Circuit Judge, in *Southern Ry. Co.* v. *Carnegie Steel Co.*, 22 C. C. A. 289 (76 Fed. 492), pertinently states the rule as follows: "If, through inadvertence, or by intention, or from any other cause, any portion of the earnings has been applied to interest or dividends, or to the permanent improvement of or addition to the property, leaving unpaid debts incurred for things necessary to keep it a going concern, this is a diversion which the court, while aiding the mortgage creditor, will first correct." *

It is from considerations of this nature that the courts are induced to require, as a condition of the appointment of a receiver, that the mortgagee shall consent to the payment of such equitable demands as are outstanding against the company, which have accrued within a reasonable space of time prior to the receivership, and, even in cases where the condition is not primarily imposed, to require that the receiver shall adjust the current receipt fund in accordance with the equities thus to be ascertained, and, under certain conditions, reimburse the preferred creditor from the *corpus* of the estate, and to that extent displace the mortgage. In further support of these observations, see *Bound* v. *South Carolina Ry. Co.*, 7 C. C. A. 322, 58 Fed. 473 ; *National Bank of Augusta* v. *Carolina, K. & W. R. Co.*, 63 Fed. 25 ; *Thomas*

---

*NOTE.—This case has now been affirmed on appeal, and claim of the Steel Company given a preference: *Southern Ry. Co.* v. *Carnegie Steel Co.*, 175 U. S. —— (20 Sup. Ct. Rep. 347). See also, on the same point, *Lackawanna Iron Co.* v. *Farmers' Loan Co.*, 175 U. S. —— (20 Sup. Ct. Rep. 363), and *Maryland Steel Co.* v. *Gettysburg Electric Ry. Co.*, 99 Fed. Rep. 150.—REPORTER.

v. *Peoria, etc. Ry. Co.*, 36 Fed. 808 ; *Wood* v. *New York &
N. E. R. R. Co.*, 70 Fed. 741 ; *Hale* v. *Frost*, 99 U. S.
389 ; *Miltenberger* v. *Logansport R. R. Co.*, 106 U. S.
286 (1 Sup. Ct. 140) ; *Thomas* v. *Western Car Co.*, 149
U. S. 95 (13 Sup. Ct. 824). It is often a difficult matter
to determine what are preferred claims and what are not,
depending to a large extent upon the particular circum-
stances of each case. According to Chief Justice Waite
they must be such as have accrued for "necessary oper-
ating and managing expenses, proper equipment, and
useful improvements :" *Fosdick* v. *Schall*, 99 U. S. 235.
It is clear from the authorities, however, that claims
cannot be included which may arise on account of addi-
tional equipments provided, and valuable and lasting
improvements made : Smith, Rec. §§ 342, 343 ; *Wil-
liamson's Admr.* v. *W. C. etc. R. R. Co.*, 33 Gratt. 624.
As an illustration of the requisites which should attend
the preferred claim, we will refer again to the case of
*Central Trust Co.* v. *Clark*, 26 C. C. A. 397, 81 Fed. 269.
It is there said : "The gear wheel which was supplied
by the Midvale Steel Company to the mortgagor company
was an important and essential part of its plant, without
which the railway company could neither discharge its
duties to the public nor realize an income by the use of
the mortgaged property. It was necessary for the rail-
way company to purchase a new gear wheel and pinion,
in order that its cable road might be kept in operation,
and that the company might preserve its franchises and
remain a going concern. The machinery in question en-
hanced the value of the mortgaged property by as much
as such machinery was fairly worth in the market." In
no sense can such claims be extended to the inclusion of
those of general creditors : *Kneeland* v. *American Loan
Co.*, 136 U. S. 89 (10 Sup. Ct. 950) ; *Burnham* v.
*Bowen*, 111 U. S. 776 (4 Sup. Ct. 675).

Measured by the understanding thus to be gathered touching the nature of the claims or demands which are entitled to preference over the mortgage, we will consider whether the petitioners' claim falls within the category. The apparatus and appliances furnished did not constitute an adjunct requisite or necessary to keep the enterprise a going concern. They were at first engrafted as an experiment, but, by design of both parties to the contract, were finally constituted a new and additional improvement. This improvement, it is true, added to and enhanced the value of the mortgage security; but, in so far as it is shown by the petition, the allegation as to its necessity, under the rule, either in the interest of the public or the mortgagees, is entirely wanting. The enterprise was a going concern before such improvement, and would have so continued without it. In support of their claim the petitioners allege that since the appointment of the receiver $3,000 have been expended out of the current earnings, in payment of improvements and betterments; but we find from the petition that such improvements consisted in placing new poles for electric wires, laying new ties and rails, etc., which were clearly necessary for putting the road into such condition that it might be safely operated. The expense thus incurred was, therefore, properly paid out of such current earnings. But such outlay furnishes no criterion in dealing with the petitioners' claim, for the reason that it was not for necessary appliances and improvements; nor does the allegation that the agreed consideration had been actually earned by the use and employment of the apparatus relieve the petitioners from showing the necessity for the expenditure, under the rule. The demurrer was properly sustained, and the decree of the court below will therefore be affirmed.

AFFIRMED.

ON MOTION FOR REHEARING.

MR. CHIEF JUSTICE WOLVERTON delivered the opinion.

The appellants ask for a rehearing of this cause, and in support of the petition therefor direct special attention to the point made in their brief, to the effect that the order appointing the receiver having directed that he should take into his possession and control all the property of the defendant corporation, "including all franchises of the said defendant company and evidences thereof, as, also, all contracts entered into or owned and possessed by said company," and having further directed him to pay "all current expenses incident to the administration of his trust, and to the condition and operation of said business of the defendant company, from time to time, as the same arises and accrues," he was thereby required to pay the particular claim and demand of the appellants ; and it is suggested that perhaps we had overlooked it in the consideration of the cause. The contention did not escape our attention, and is practically, or inferentially at least, covered by the opinion. It was there held that the claim or demand in question was not such a preferred claim as was entitled to payment in preference to the mortgage lien. The terms of the order, when read in their entirety, do not require the payment of any claims which had accrued prior to the appointment of such receiver, but such current expenses only as are incident to the administration of his trust and to the condition and operation of the business. So that we find nothing in the order which requires the receiver to pay any debt or obligation of the company not entitled to preference over the mortgage creditors. For these reasons, the petition for rehearing will be denied.

REHEARING DENIED.